This is a will contest. Frank R. Trombley presented for probate an instrument purporting to be the last will and testament of his father, Louis Trombley, deceased. Its probate was opposed by the other heirs, Rose King, a daughter, and Corinne Doetsch, a granddaughter, on the grounds of mental incompetency and undue influence. The proponent prevailed in probate court. An appeal was taken to the circuit, where there was a directed verdict in favor of the will. The contestants have brought error.
Louis Trombley died on July 19, 1924, at the age of 86 years. The medical certificate of death gives the cause as arteriosclerosis and senility. He executed the will in question on May 22, 1924. For five years prior to his death, he had made his home with his son Frank. Rose King, a married daughter, lived with her husband in the city of Detroit. Corinne Doetsch, the granddaughter, whose mother had been dead for some years, was an inmate of a Catholic *Page 119 
order in the city of Milwaukee, Wisconsin. Frank, Corinne, and Mrs. King were the only heirs. The will gave Frank $1,000 and the residue of the estate after the payment of $1,000 each to Mrs. King and Corinne. The estate consisted of a duplex building valued at $12,000.
The issue involves the questions of mental incapacity and undue influence on the part of Frank and members of his family. We have read the record, and agree with the trial court that the evidence was not sufficient to justify the submission to the jury of either of these questions.
It is undisputed by any evidence that, a few days before the will was executed, the testator went to the office of Herman Rohns, an attorney in the city of Detroit, and gave directions as to the provisions of the will he desired to make. The will was prepared in accordance with these directions, and on May 21, 1924, the testator returned and signed it in the presence of Mr. Rohns and Edwin Laube, the subscribing witnesses. He could not read or write, except that he had been taught to make his signature. After signing the will and leaving his attorney's office, he seems to have concluded that he could write a better signature, and so notified the attorney that he desired to sign the will again. Mr. Rohns had retained a carbon copy. He took it to the testator on May 22, 1924. The testator requested that it be read to him. After this was done, he signed it in the presence of the same witnesses who had subscribed to the original will. Both of these witnesses testified to facts showing mental capacity and freedom from undue influence.
The contestants called as a witness Mrs. Doetsch, the stepmother of Corinne. She testified that she talked with the testator in the afternoon of the day *Page 120 
the will was made. On direct examination she was asked:
"Q. Did he recognize you?
"A. Why I talked to him and all he said to me was, I am awfully sick, I am awful sick. I said, 'I have a picture of Corinne. I have a new picture of her.' I took it out and showed it to him and he just looked at it like that, just as if it was a blank piece of paper, made no remarks at all.
"Q. He said he was awfully sick?
"A. Yes, sir.
"Q. Did he call you by name, speak of Corinne at all?
"A. No. He said nothing at all, only that 'I am awfully sick,' that is all."
She was then asked if in her opinion the testator was mentally competent to make a will that day. The court properly excluded the answer. The facts testified to as a basis for her opinion had no tendency to show mental incapacity.
In view of the fact that the testator was able to go to his attorney's office and there, without assistance, dictate the provisions of a will which, under the circumstances, made an equitable disposition of his property, we do not feel inclined to extend this opinion by detailing other testimony of the contestants which has no greater evidential value than to show that the testator had some of those physical and mental infirmities with which most persons of advanced age are afflicted. It is sufficient to say that none of the testimony offered established a lack of testamentary capacity.
On the question of undue influence, complaint is made of a ruling of the court excluding testimony of witnesses who were asked to testify to statements and declarations of the testator showing restraint by Frank Trombley and members of his family. *Page 121 
In Re Allen's. Estate, 230 Mich. 584, this court said:
"The exercise of undue influence must be established by testimony wholly independent of statements or declarations of the testator. When undue influence is shown to have been exercised, its effect may be disclosed by the state of mind of the testator, and such state of mind may be shown by his statements and declarations."
The trial court rightly held that statements and declarations of the testator were not admissible in evidence until the exercise of undue influence had been shown by other testimony.
The record in this case is barren of any evidence sufficient to take either of the questions involved out of the realm of conjecture. The court was right in directing a verdict for the will.
The judgment is affirmed, with costs against the defendants.
WIEST, C.J., and BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.